LORD BALTIMORE FILLING STATIONS, Inc., a Maryland corporation, Appellant,

v.

Harry L. HOFFMAN and Edna B. Hoffman, Appellees.

No. 1652.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 15, 1955.

Decided Oct. 26, 1955.

---

Herbert J. Miller, Jr., Washington, D. C., with whom Perry S. Patterson, Washington, D. C., was on the brief, for appellant.

Jo V. Morgan, Jr., Washington, D. C., with whom John J. Carmody, Washington, D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Lord Baltimore Filling Stations, Inc., hereafter called Lord Baltimore, appeals from a judgment against it awarding to appellees possession of premises which they had leased to Lord Baltimore and upon which it operated a filling station. The basis of the action was a violation by Lord Baltimore of a covenant in the lease against assignment without consent of the lessors.

Lord Baltimore contends that it did not breach the covenant against assignment. This argument is based on the fact that Lord Baltimore is a wholly owned subsidiary of The American Oil Company, hereafter called American Oil, and pursuant to a plan of dissolution all assets of Lord Baltimore, including the lease in question, were transferred to American Oil. It is argued that such transfer did not amount to an assignment within the meaning of the covenant, because of a provision of the lease making it binding on the parties and their successors. We do not see how this provision could abrogate the express cove-

nant against assignment, and we are cited to no authority so holding. Authority is cited that one corporation may succeed another, and of course this is true. But the essence of a breach of covenant against assignment is a transfer by a lessee of his entire interest in the premises, and that appears to be the case here. The separate entity of the corporate lessee is not to be disregarded. Thus we held in Burrows Motor Co. v. Davis, D.C.Mun.App., 76 A. 2d 163, that transfer of stock of a corporate lessee did not constitute an assignment of a lease held by the corporation. See also Posner v. Air Brakes & Equipment Corporation, 2 N.J.Super. 187, 62 A.2d 711. It has been held that merger of a lessee-corporation into another corporation is not a violation of a covenant against assignment. Dodier Realty & Inv. Co. v. St. Louis Nat. Baseball Club, 361 Mo. 981, 238 S.W.2d 321, 24 A.L.R.2d 683. But here there was no merger. One corporation, Lord Baltimore, assigned the lease to another corporation, American Oil, and the fact that the one was the wholly owned subsidiary of the other did not prevent the transaction from being a true assignment. In H. P. Hood & Sons v. Perry, 248 Mass. 350, 142 N.E. 794, a Maine corporation transferred all its assets to a Massachusetts corporation organized to take over and carry on the business under substantially the same management. Among the assets was a lease with a covenant against assignment, and it was held the transfer was a breach of the covenant. We think the same ruling applies here.

Lord Baltimore further contends that if there was a breach, there was a waiver of the breach. The evidence disclosed that transfer of Lord Baltimore's assets to American Oil took place on August 31, 1954, and that on or about September 3 Mrs. Hoffman, one of appellees, received by mail a check for September rent and a mimeographed letter. The check was of the same size as previous rent checks from Lord Baltimore and bore the same red and black Amoco emblem, and was signed by the same agent of the drawer. However, the check was clearly printed

"American Oil Company" as drawer instead of the usual "Lord Baltimore Filling Stations, Inc.," the drawee was a different bank and the check was pink instead of the usual light green. The mimeographed letter, contained in the same envelope with the check, notified appellees that the lease had been assigned to American Oil and that American Oil would "continue as a tenant under said lease." Mrs. Hoffman endorsed the check and deposited it, but, according to her testimony, she did not notice the above-described difference in the check and did not read the letter until the following day. Upon reading it she forwarded it to her attorney who, on September 9, notified Lord Baltimore that the lease was deemed to have been breached by assignment to American Oil and demanded possession. Lord Baltimore argues that even though Mrs. Hoffman may not have noticed the difference in the check and may not have read the letter, in law she was chargeable with notice that the lease had been assigned, and acceptance of the check constituted a waiver. We cannot agree. Mere acceptance of the rent without knowledge of the breach does not constitute a waiver. Under the circumstances of this case we think the question of waiver was properly submitted to the jury.

█ In connection with submission of the question of waiver to the jury, Lord Baltimore argues that the jury were improperly instructed with respect to the element of intent, but a reading of the entire charge, or so much thereof as is included in the record, convinces us that the jury were properly instructed.

██ Another claim of error by Lord Baltimore relates to the testimony of an attorney who had represented appellees in the negotiations respecting the various lease renewals and extensions. This testimony was offered for the express purpose of demonstrating that "a forfeiture of the lease would not be unconscionable or inequitable." The effect of the testimony was that since the early 1930's the lease had contained an option to purchase and that Lord Baltimore, by threatening to exercise the option, had forced appellees to renew and extend the lease at an unfair rent; that appellees, an elderly couple dependent upon the rental income did not wish to sell and whenever they sought a higher rental Lord Baltimore used the option to purchase as a "bludgeon" to compel them to accept its terms.

We agree that this testimony was irrelevant to any issue in the case, but it was received only after Lord Baltimore, on cross-examination of Mrs. Hoffman, had brought out the fact that the service station on the property had been erected by Lord Baltimore at its sole expense. Thus Lord Baltimore, at least inferentially, sought to convince the jury that if appellees prevailed they would not only be recovering their own property but also a service station thereon which had been erected at no cost to them.[1] Having thus injected into the case the "equities" of the situation, Lord Baltimore cannot complain that appellees were allowed to present their side of the picture. "It is a familiar rule that one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening." Warren Live Stock Co. v. Farr, 8 Cir., 142 F. 116, 117.[2]

1. Lord Baltimore unsuccessfully sought to have the jury instructed that: "If the jury finds that a verdict for the plaintiff would be unjust and inequitable in view of the investment in buildings and other fixtures on the premises made by defendant, then it must bring in a verdict for the defendant. On this point the jury is instructed that forfeitures of leasehold estates are not favored by the law."

2. See also United States v. Regents of New Mexico School of Mines, 10 Cir., 185 F.2d 389; H. Herfurth, Jr., Inc., v. United States, 66 App.D.C. 220, 85 F.2d 719. Cf. Stringer v. Young's Lessee, 3 Pet. 320, 7 L.Ed. 693; Crawford v. United States, 91 U.S.App.D.C. 234, 198 F.2d 976.

The extent to which the rule shall be applied is largely discretionary with the trial court, but care should be taken to see that no case is decided on a matter wholly extraneous to any issue in the case. In the instant case the trial court properly instructed the jury that the only issues were whether there was a breach of the lease and, if so, whether there was a waiver of the breach.

■ Lord Baltimore also contends that the action was improperly brought against it. It argues that the action, being a statutory summary action for possession,[3] should be brought against the one in actual possession, and that in this case American Oil was in possession and was the proper party defendant. Fults v. Munro, 202 N.Y. 34, 95 N.E. 23, 37 L.R.A.,NS., 600, is cited as supporting this proposition. In that case it does not appear that there was any covenant against assignment, and it was held that an assignee lawfully in possession should be joined as party defendant in a summary possession action. The facts distinguish that case from the present one. Perhaps under our statute American Oil could have been sued as sole defendant or joined as codefendant. However, we do not think that Lord Baltimore, having received possession under the lease and having lost right to possession by its breach of the lease, is in a position to complain that a judgment for possession was given against it. It is quite evident that American Oil was fully aware of the proceedings and if it had desired to defend, it should have asked leave to intervene. Moreover, it seems plain that the defense, although conducted in the name of Lord Baltimore, was actually conducted by and on behalf of American Oil.

Affirmed.

3.  Code 1951, Supp. III, § 11–735.