Black, P.J.
This is a judicial review of a judge’s reversal of an order by the defendant, Brookline Rent Control Board (“the Board”) denying a Certificate of Eviction to the plaintiff, Bessie Slavin d/b/a Summit Realty Trust, with regard to the premises known as apartment 8A, 9 Summit Avenue, Brookline, Massachusetts.
The record’ discloses that on December 3, 1985, the plaintiff made an application for a Certificate of Eviction as to one Donald Wiener, a tenant at the subject premises, on the grounds that the said tenant had violated an obligation or covenant of his tenancy (other than the obligation to surrender possession upon proper notice) and had failed to cure the violation after having received written notice thereof from the landlord. Specifically, the landlord alleged that the tenant had allowed a person (Patrick Azocar) to establish residency in the tenant’s apartment, which had existed for over a year, in violation of the lease agreement signed by the tenant.
A hearing was held with respect to the application for the Certificate of *169 Eviction on December 17,1985. The manager of the subject premises, Richard Diamond testified in behalf of the landlord. He entered into the record a copy of the lease signed by the tenant. Article 14 thereof expressly prohibited the tenant from permitting occupancy of the premises by any one, except on a temporary basis, without the prior written assent of the landlord. A copy of a letter dated December 10,1985, from Summit Realty Trust to the tenant, was also introduced. That letter advised the tenant of the landlord’s intention to terminate the tenancy due to the tenant’s having permitted unauthorized person to occupy the premises, and the tenant was directed to deliver up the premises on or before January 31,1986. The manager testified to his personal observations as to the presence of the unauthorized person, including observations relative to that person’s paraphernalia in a bedroom and his presence in the apartment at various times when repairs were being made in the apartment.
One David Mallon testified in behalf of the tenant to the effect that he and David Wiener had been the original signers of the lease and tenants in apartment 8A at 9 Summit Avenue. He further testified that he had vacated the premises around August 1,1984, and that while he resided at the premises the apartment was not well taken care of. He described various conditions in the apartment, including paint flaking from the livingroom ceiling, a kitchen wall “on the verge of collapse” due to a leak, lack of guard rails on the steps, and the general lack of maintenance. On cross-examination by the landlord’s attorney, the witness acknowledged that he had never made any written complaints to the landlord concerning any of these conditions. He also acknowledged that he had observed work being done in the apartment after he moved out.
The tenant testified.that he had never received any notice to the effect that Patrick Azocar could not live in the apartment. He also testified that'he had initiated numerous complaints to the Brookline Board of Health, and that he had organized a tenant’s union. On cross-examination acknowledged that Patrick Azocar had resided in his apartment since September 1,1984, and that no rental applications had ever been filed in his behalf.
In his closing statement to the Board, the tenant’s attorney argued,' inter alia, that the case was “a clear-cut case of retaliatory eviction”.The property manager acknowledged that the written notice to the tenant did not afford the tenant an opportunity to cure the violation, but stated that .the landlord’s attorney had contacted the Brookline Rent Control Office with respect to the notice requirement, and had been told that giving the tenant an opportunity to correct the violation was unnecessary.
The Board made numerous findings of fact. In its findings of fact #6, the' board found that the property manager had “unequivocally refused to .allow another roommate to move into Unit #8A” after David Mallon vacated the apartment. It further found that Patrick Azocar began to occupy Unit 8A on or about September 1, Í 984, and that the property manager was aware of this fact as early as that date. The Board concluded its findings of fact as follows:
18. The Board finds that Mr. Diamond’s true motive in seeking to evict Mr. Wiener is not for a violation of a covenant of his tenancy inasmuch as he had the opportunity to file an application for eviction against him in September, 1984 when he acquired actual knowledge of Mr. Azocar’s occupancy in Unit #8A.
19. The board finds that the filing of an application for certificate of eviction approximately three months after Mr. Wiener formed a tenants’ union at 9 Summit Avenue, less than two months after Mr. *170 Wiener filed a complaint with the Brookline Police Department for lack of heat, and less than three weeks after Mr. Wiener filed a tenant petition for adjustment with the rent control office raises a presumption that the landlord is acting in retaliation for the exercise by Mr. Wiener of his legal rights.
20. The Board finds that Mr. Diamond failed to comply with the prerequisites of § 9 (a)(2) of Article 38 in that he neither notified Mr. Wiener in writing that he was in violation of a covenant of his tenancy nor gave him an opportunity to cure said violation.
The Board denied the plaintiffs application on May 13, 1986.
The plaintiff thereafter sought judicial review of the Board’s denial of the application for a Certificate of Eviction. Upon review by a justice of the Brookline Division, the Board’s decision was reversed and annulled. The judge ruled that under section 9 (a)(2) of Article 38 of the Brookline Rental and Eviction Control By-Law a landlord is obligated to show that the tenant has “violated an obligation or covenant of his tenancy,” but is not required to demonstrate that he asserts his claim “in good faith,” nor is he required to show that his purpose is not in conflict with rent control. The court further held that if the tenant had any affirmative defenses, such defenses must be raised in the Summary Process action, not in the hearing before the Board. The Board now seeks appellate review of these and other rulings by the judge.
At the outset, we would address the matter of the failure of the landlord to afford the tenant an opportunity to cure the alleged violation. It appears uncontroverted that the landlord’s letter to the tenant dated December 10, 1985, citing the violation of the lease by allowing an unauthorized tenant on the premises and ordering this tenant to deliver up to the premises by January 10, 1986, was framed following discussions between the landlord’s attorney and representatives of the Rent Control Office. Clearly, the letter does not comport with the requirements of section 9 (a)(2) of the town by-law. On the other hand, it is equally obvious that the Board has not regarded failure to satisfy the notice requirements of section 9 (a)(2) as jurisdictional, and the tenant has, at no time, asserted that the violation would have been corrected had the landlord accorded him an opportunity to do so, and there is nothing in the record to suggest that the tenant has, at anytime, attempted to correct the violation or claimed that he would do so if afforded the opportunity. Under these circumstances, we would conclude that the failure of the landlord to strictly adhere to the notice requirements of section 9 (a) (2) is not a bar to issuance of the Certificate of Eviction. We would also hasten to add, that we agree with the trial judge’s observation that either the By-Law or the Board’s regulation should be clarified to indicate the consequences of failure by the landlord to strictly comply with the notice requirements of section 9 (a)(2).
Perhaps more importantly, is the issue in the scope of the Board’s inquiry under section 9 (a)(2), and the grounds upon which an application for eviction maybe denied. Again, we agree, with the trial judge’s interpretations of section 9 (a)(2). Unlike section 9 (a)(8) there is no affirmative requirement that the landlord show “good faith”, nor is there any requirement that purpose for the eviction not conflict with the provisions of the rent control by-law, as in 9 (a) (10). In other words, there are only two conditions articulated in section 9 (a)(2), namely, (1) a showing of a violation by the tenant of an obligation or covenant of the lease and (2) notice of the violation and an opportunity to cure it. The record reflects the Board’s factual findings showing existence of the violation and we have already addressed the issue of adequacy of the notice. The Board has clearly exceeded the authority conferred upon it by the express *171 terms of the By-Law by extending the facts of its finding to this issue of good faith and retaliatory eviction. We have consistently held that affirmative defenses available to a tenant in a Summary Process Action (e.g. retaliatory eviction under G.L. c. 239, § 2A and defenses under G.L, c. 239, S8A) are not the proper subject of inquiry by the Board, and may not be uséd by the Board as a basis for denial of an application for a Certificate of Eviction under any of the provisions of section 9(a) (see, Post, Trustee v. Brookline Rent Control Board, 1984 Mass. App. Div. 251). Neither the language'of the By-Law nor the statutory language of G.L. c. 239 permit the Board to delve into such matters, whether expressly or by implication.
Having reached the conclusions set forth above, the decision of the Brookline Division reversing the Board’s denial of the Certificate of Eviction is affirmed and the case is returned to the Board for allowance of the plaintiffs application and issuance of the Certificate of Eviction.